UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **UNITED STATES OF AMERICA** | : | **CRIMINAL ACTION** |
| v. | : | |
| **JUAN SEPULVEDA** | : | **No. 20-023** |

**MEMORANDUM**

PRATTER, J.                                                                                                                                     JUNE 22, 2023

Juan Sepulveda moves to suppress a firearm recovered from his vehicle during a traffic stop. Because the officers had reasonable suspicion to stop Mr. Sepulveda based on a number of traffic violations, and because he was lawfully arrested based on the presence of marijuana and heroin in the vehicle, the officers' search of the vehicle did not violate the Fourth Amendment. Thus, the Court denies Mr. Sepulveda's motion to suppress.

**FINDINGS OF FACT**

The Court held an evidentiary hearing on the motion to suppress on May 5, 2023. The Government presented a single witness, Officer Jason Hernandez of the Philadelphia Police Department, who recounted the events in question. The Government also introduced several exhibits, including photographs of the intersection where the traffic stop occurred. The Court finds the following facts based on the evidence presented at the evidentiary hearing.[1]

---

[1] In considering a motion to suppress, the trial judge assesses witness credibility, weighs evidence, and acts as the finder of fact. *See United States v. France*, 414 F. Supp. 3d 747, 750 (W.D. Pa. 2019). After the events in question, Officer Hernandez suffered a head injury in a motorcycle accident, delaying the evidentiary hearing on this motion. But while Officer Hernandez testified that he had experienced some memory loss immediately following the accident, he also testified that his memory had improved and that he remembered the traffic stop with Mr. Sepulveda clearly. May 5, 2023 Hr'g Tr. at 34:2–20. The Court finds Officer Hernandez's testimony credible.

1

Around 6:25 p.m. on January 14, 2019, Philadelphia Police Officers Jason Hernandez and Daniel Rivera were driving south on 26th Street in Philadelphia towards West Cumberland Street. May 5, 2023 Hr'g Tr. at 6:6–15; 7:18–22; 12:3–7. While driving, the officers saw a maroon Nissan make a wide turn in front of them off of Cumberland Street and onto 26th Street, traveling south in the northbound lane for about half a block before moving to the correct lane. *Id.* at 12:13–24. The officers followed the Nissan and entered the license plate information into the mobile computer in their vehicle. *Id.* at 13:12–13. This check showed that the Nissan's tag had expired in 2018 and that the vehicle registration had been suspended for lack of insurance. *Id.* at 13:16–18. Based on this information, the officers activated their lights and sirens, and the driver of the Nissan, later identified as Mr. Sepulveda, pulled over immediately. *Id.* at 16:15–20.

Once stopped, the officers approached the Nissan, where they smelled a strong odor of marijuana. *Id.* at 17:25–18:7. The officers asked Mr. Sepulveda for his license, registration, and proof of insurance. *Id.* at 18:17–18. When Mr. Sepulveda opened the center console of the Nissan to retrieve these documents, the officers spotted a number of packets containing what Officer Hernandez believed to be heroin, along with several burnt marijuana cigars. *Id.* at 19:1-9. Seeing this, Officer Rivera took Mr. Sepulveda out of the vehicle and placed him into custody, handcuffing him and putting him in the back of the officers' vehicle. *Id.* at 19:14–21. Officer Rivera then recovered the narcotics from the Nissan. *Id.* at 20:4–9. After that, Officer Hernandez conducted a search of the front of the vehicle in the area within an arm's reach of the driver to look for any additional narcotics or other contraband. *Id.* at 20:9–12. While searching, Officer Hernandez discovered a black revolver handgun, loaded with six live rounds, inside a pizza warming bag on the front passenger seat. *Id.* at 20:12–16. Officer Hernandez secured the handgun and conducted an inquiry to see if Mr. Sepulveda had a license to carry a firearm. *Id.* 21:11–17.

2

When the inquiry revealed that Mr. Sepulveda did not have a license to carry, the officers arrested Mr. Sepulveda and issued traffic violations for the lack of insurance and suspended registration. *Id.* at 21:19–22:2.

## DISCUSSION

Mr. Sepulveda contends that the warrantless search of his vehicle was unconstitutional under the Fourth Amendment because Officers Rivera and Hernandez lacked probable cause. He therefore contends that the firearm uncovered during this search is "fruit of the poisonous tree" that must be excluded as evidence. The Government argues that the warrantless search of the vehicle is justified by several exceptions to the warrant requirement.

### I. The Officers Had Reasonable Suspicion for the *Terry* Stop

The Fourth Amendment protects individuals against "unreasonable searches and seizures." U.S. Const. amend. IV. For Fourth Amendment purposes, "the burden of proof is on the defendant who seeks to suppress evidence. However, once the defendant has established a basis for his motion, *i.e.*, the search or seizure was conducted without a warrant, the burden shifts to the government to show that the search or seizure was reasonable." *United States v. Johnson*, 63 F.3d 242, 245 (3d Cir. 1995) (internal citation omitted). The Government must prove that the search or seizure was reasonable by a preponderance of the evidence. *See United States v. Matlock*, 415 U.S. 164, 177 n.14 (1974).

Generally, police officers must obtain a warrant supported by probable cause for a search or seizure to be reasonable. *See Katz v. United States*, 389 U.S. 347, 357 (1967); *Terry v. Ohio*, 392 U.S. 1, 20 (1968); *United States v. Brown*, 448 F.3d 239, 244 (3d Cir. 2006). One exception to this general rule allows officers to conduct a brief investigatory stop of an individual, without probable cause, if the officers, in light of their experience, have a reasonable, articulable suspicion

3

that "criminal activity may be afoot." *Terry*, 392 U.S. at 30; *accord Illinois v. Wardlow*, 528 U.S. 119, 123 (2000). Reasonable suspicion requires more than an "inchoate and unparticularized suspicion or 'hunch,'" *Terry*, 392 U.S. at 27, but it does not require an officer to "rule out the possibility of innocent conduct." *United States v. Arvizu*, 534 U.S. 266, 277 (2002). The officer's suspicion "must be based on commonsense judgments and inferences about human behavior." *Wardlow*, 528 U.S. at 125.

The *Terry* reasonable suspicion standard "applies to routine traffic stops." *United States v. Delfin-Colina*, 464 F.3d 392, 397 (3d Cir. 2006). "[A]n officer's Fourth Amendment burden of production is to (1) identify the ordinance or statute that he believed had been violated, and (2) provide specific, articulable facts that support an objective determination of whether any officer could have possessed reasonable suspicion of the alleged infraction." *Id.* at 399. Because this is an objective determination based on the totality of the circumstances, the officer's subjective motivation is irrelevant. *See Whren v. United States*, 517 U.S. 806, 813 (1996); *accord United States v. Yusuf*, 993 F.3d 167, 182 n.12 (3d Cir. 2021). In the traffic context, there is "a bright-line rule that any technical violation of a traffic code legitimizes a stop, even if the stop is merely pretext for an investigation of some other crime." *United States v. Mosley*, 454 F.3d 249, 252 (3d Cir. 2006).

The facts established at the suppression hearing make clear that the officers had reasonable suspicion to conduct a lawful *Terry* stop based on the traffic violations witnessed at the time of the stop: driving with a suspended license and driving without insurance. Because the officers had reason to believe that Mr. Sepulveda had violated state traffic laws, they were constitutionally permitted to conduct a lawful *Terry* stop of his car.

## II. The Officers Had Probable Cause To Search Mr. Sepulveda's Vehicle After They Observed Marijuana and Heroin in Plain View

Another exception to the Fourth Amendment warrant requirement permits police to search a vehicle without a warrant if there is "probable cause to believe that the vehicle contains evidence of a crime." *United States v. Donahue*, 764 F.3d 293, 299–300 (3d Cir. 2014). Under this exception, there are no restrictions on which portions of the vehicle may be searched, including closed or sealed containers.[2] *Id.* at 300. Rather, officers may search any part of the vehicle "that may conceal the object of the search." *Id.* In this context, probable cause exists when the facts, "viewed from the standpoint of an objectively reasonable police officer" support a "fair probability" that the vehicle contained evidence of the crime, based on the totality of the circumstances at the time of the search. *Id.* at 301.

Here, the officers had probable cause to believe that Mr. Sepulveda's vehicle might contain evidence of a crime based on the smell of marijuana and the officers' observation of marijuana and heroin inside the vehicle. *See United States v. Ramos*, 443 F.3d 304, 308 (3d Cir. 2006) (smell of marijuana alone "may establish not merely reasonable suspicion, but probable cause"); *United States v. Byrd*, 813 F. App'x 57, 61 (knowledge of a marijuana blunt in a vehicle may establish

---

[2] Mr. Sepulveda argues that, based on Officer Hernandez's testimony that he only intended to conduct a search of the area of the vehicle within arm's reach of Mr. Sepulveda, *see* May 5, 2023 Hr'g Tr. at 29:24-30:1, the Court should instead treat this search as a protective sweep. Under this exception to the Fourth Amendment's warrant requirement, an officer may conduct "a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others." *Maryland v. Buie*, 494 U.S. 325, 327 (1990). Mr. Sepulveda contends that Officer Hernandez's search fails this test because, at the time he searched the vehicle, Mr. Sepulveda was in custody and so posed no danger to the officers. But nothing in Officer Hernandez's testimony supports this framing of the search. Officer Hernandez testified that he was searching the vehicle not to protect himself and Officer Rivera, but to look for contraband. Nor does the fact that Officer Hernandez chose to search only the front seats of the vehicle change the fact that, under the automobile exception, he was entitled to search every part of the vehicle.

5

probable cause). Accordingly, the officers were permitted to search the vehicle under the Fourth Amendment.

## CONCLUSION

For the foregoing reasons, the Court denies Mr. Sepulveda's motion to suppress. An appropriate Order follows.

BY THE COURT:

*/s/ Gene E.K. Pratter*
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE